**IN THE CIRCUIT COURT OF SAINT CHARLES COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| THOMAS WHITEHILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| ASTRAZENECA PHARMACEUTICALS, LP | ) |
| | ) Div. |
| Defendant. | ) |
| | ) |
| **Serve**: | ) |
| CT Corporation System | ) **JURY TRIAL REQUESTED** |
| 120 South Central Avenue | ) |
| Clayton, Missouri 63105 | ) |

### PETITION

Plaintiff Thomas Whitehill ("Plaintiff" or "Mr. Whitehill"), in order to redress the injuries Defendant caused after terminating him because of his age, race, color, sex, religious beliefs, association with individuals belonging to protected classes, and in retaliation for opposing Defendant's illegal discriminatory acts, brings this claim pursuant to Missouri Human Rights Act, Section 213.010 et seq., RSMo 1986 ("MHRA"). In support thereof, Plaintiff states as follows:

### PARTIES, VENUE, and JURISDICTION

1. Plaintiff Whitehill's date of birth is February 15, 1966.

2. On April 29, 2022, Mr. Whitehill was 56 years old.

3. He is a white, Caucasian, adult male and is and was at all relevant times a believer in Jesus Christ.

RANDAZZA | LEGAL GROUP

4. Mr. Whitehill is a member of Peine Ridge Reformed Baptist Church.

5. Defendant Astrazeneca Pharmaceuticals, LP ("Defendant" or "AZ") is a limited partnership organized under the laws of the State of Delaware.

6. This claim arose in Saint Charles County, State of Missouri where Plaintiff worked for Defendant at all relevant times, and where Plaintiff was discriminated against, retaliated against, and terminated by Defendant.

7. Venue is proper in this Court pursuant to Mo. Rev. Stat. § 508.010.4 in that Plaintiff's claim arose in Saint Charles County, Missouri.

## FACTS

8. Mr. Whitehill worked for Defendant AZ for nearly 25 years until his wrongful termination on April 29, 2022.

9. At the time of his termination, AZ employed Mr. Whitehill as the manager of its Renal Metabolic Specialty Sales Team.

10. In August of 2021, AZ began requiring its employees to submit to testing for COVID-19 infection on a weekly basis.

11. Mr. Whitehill was tested weekly for the virus and submitted his test results to AZ from August 27, 2021 until his unlawful termination on April 29, 2022.

12. In January of 2022, AZ announced what it described as a "100% COVID vaccination policy" for its United States division and that all employees would need to receive a COVID-19 mRNA vaccination for continued employment.

13. Employees that could not show proof of vaccination by March 31, 2022 would have their employment terminated with no severance pay.

14. However, this new policy had exceptions.

RANDAZZA | LEGAL GROUP

15. On February 10, 2022, AZ informed employees that they could apply for medical or religious exceptions to the vaccination policy.

16. If AZ approved the exemption request, the exempted employee could be tested for COVID-19 weekly in lieu of receiving the mRNA vaccination.

17. On February 15, AZ sent its employees an email with instructions on how to complete a "Religious Accommodation Request Form."

18. AZ set a deadline of February 28, 2022 to apply for the exemption.

19. Mr. Whitehill submitted his application in a timely manner.

20. The application included a letter from the pastor of Peine Ridge Reformed Baptist Church, explaining that Mr. Whitehill believes that "he must submit every area of his life to the teaching of the Christian scriptures" and that he strives to do so "in a manner that is consistent with the doctrines of our church and the dictates of his conscience." (*See* Religious Reasonable Accommodation Request Form, attached hereto as **Exhibit 1** and incorporated as though fully restated and set forth herein.)

21. In his application for exemption, Mr. Whitehill described how his religious beliefs required accommodation, going so far as to provide citations to specific quotations from Scripture supporting his beliefs. (*See* **Exhibit 1**.)

22. In his application, Mr. Whitehill further explained that he does not take any vaccines or any type of medication because God created his immune system and he objects to "the intrusion of any medical intervention designed to modify God's design of his immune system."

23. He also expressed objection to weekly PCR COVID testing because of fears that the substances contained in the test could injure his body. (*See* **Exhibit 1**.) However, while he

objected to the PCR COVID testing requirement, Mr. Whitehill expressed his willingness to do weekly testing in lieu of vaccination.

24. On March 31, 2022, AZ rejected his accommodation request, stating that he was "not qualified for a reasonable accommodation."

25. AZ also stated that it was rejecting his request because it would cause AZ "undue hardship" in that it could lead to "business disruption/increased costs resulting from illness-related absences."

26. AZ's rejection additionally stated that the decision was "final and not subject to appeal" and that Mr. Whitehill's employment would be "terminated without severance" on April 29, 2022 if he chose not to get vaccinated. (*See* March 31, 2022 Email from AZ to Plaintiff, attached as **Exhibit 2** and incorporated as though fully restated and set forth herein.)

27. AZ improperly and incorrectly concluded that Mr. Whitehill's accommodation request was based on personal, and not religious, beliefs.

28. Despite AZ's conclusion that granting Mr. Whitehill's accommodation request would cause it undue hardship, it approved a substantially similar accommodation request from a 33-year-old employee who was twenty-three years younger than Mr. Whitehill. The younger employee was permitted to be tested for COVID-19 every week rather than get vaccinated for it.

29. Upon information and belief, the other employee did not belong to the same church as Mr. Whitehill.

30. As represented in AZ's correspondence rejecting Mr. Whitehill's accommodation request, he was terminated from his employment with no severance on April 29, 2022.

31. On or about May 28, 2022, Mr. Whitehill filed a charge of discrimination against Defendant with the Missouri Commission on Human Rights ("MCHR"). (*See* Charge of

Electronically Filed - ST CHARLES CIRCUIT DIV - June 24, 2023 - 03:55 PM

Discrimination, attached hereto as **Exhibit 3** and incorporated as though fully restated and set forth herein.)

32. Upon information and belief, on June 1, 2022, MCHR notified Defendant that Plaintiff had filed his charge of discrimination.

33. As noted, Plaintiff Whitehill was 56 years old at the time of his termination.

34. At all points during his employment, Plaintiff was a highly qualified, high-performing employee and highly competent in executing his required duties.

35. Upon information and belief, Defendant replaced Plaintiff with a younger, less qualified employee.

36. On March 27, 2023, MCHR issued Plaintiff Whitehill a Right to Sue. (*See* Right to Sue, attached hereto as **Exhibit 4** and incorporated as though fully restated and set forth herein.)

37. Plaintiff has filed this lawsuit within two years of his termination and within ninety days of receiving a right to sue letter from the Missouri Commission on Human Rights.

38. Plaintiff has incurred substantial economic and non-economic harm and seeks damages in excess of $25,000, to be determined at trial.

## FIRST CLAIM FOR RELIEF

**Discrimination – Religion – Violation of Missouri Human Rights Act, Section 213.010 et seq., RSMo 1986**

39. Plaintiff reasserts the prior allegations of this Complaint as though set forth fully herein.

40. Defendant, by its actions and failures to act, including but not limited to those described above, discriminated against Plaintiff because of his religion in violation of the Missouri Human Rights Act.

41. Plaintiff was treated less favorably than other similarly situated employees who did not share his faith.

42. Plaintiff's religious beliefs were a motivating factor in Defendant's decision to take all adverse actions against Plaintiff, including terminating Plaintiffs' employment.

43. As a result of Defendant's discriminatory actions and failures to act as described herein, Plaintiff has suffered non-diagnosed emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life.

44. In addition, Plaintiff has lost income and benefits of employment and has incurred and will continue to incur attorney's fees, costs, and expenses of suit.

45. Defendant's conduct was outrageous because of its evil motive or reckless indifference to the rights of Plaintiff and, as such, warrants an award of punitive damages in such sum as will serve to punish Defendant and to deter it and others from like conduct.

## SECOND CLAIM FOR RELIEF

**Discrimination – Sex – Violation of Missouri Human Rights Act, Section 213.010 et seq., RSMo 1986**

46. Plaintiff reasserts the prior allegations of this Complaint as though set forth fully herein.

47. Defendant, by its actions and failures to act, including but not limited to those described above, discriminated against Plaintiff because of his sex in violation of the Missouri Human Rights Act.

48. Upon information and belief, Plaintiff was treated less favorably than other similarly situated female employees, who were not terminated.

49. Plaintiff's sex was a motivating factor in Defendant's decision to take all adverse

actions against Plaintiff, including terminating Plaintiffs' employment.

50. As a result of Defendant's discriminatory actions and failures to act as described herein, Plaintiff has suffered non-diagnosed emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life.

51. In addition, Plaintiff has lost income and benefits of employment and has incurred and will continue to incur attorney's fees, costs, and expenses of suit.

52. Defendant's conduct was outrageous because of its evil motive or reckless indifference to the rights of Plaintiff and, as such, warrants an award of punitive damages in such sum as will serve to punish Defendant and to deter it and others from like conduct.

## THIRD CLAIM FOR RELIEF

**Discrimination – Age – Violation of Missouri Human Rights Act, Section 213.010 et seq., RSMo 1986**

53. Plaintiff reasserts the prior allegations of this Complaint as though set forth fully herein.

54. Defendant, by its actions and failures to act, including but not limited to those described above, discriminated against Plaintiff because of his age in violation of the Missouri Human Rights Act.

55. Plaintiff was treated less favorably than other similarly situated younger employees, who were not terminated.

56. Plaintiff's age was a motivating factor in Defendant's decision to take all adverse actions against Plaintiff, including terminating Plaintiffs' employment.

RANDAZZA | LEGAL GROUP

57. As a result of Defendant's discriminatory actions and failures to act as described herein, Plaintiff has suffered non-diagnosed emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life.

58. In addition, Plaintiff has lost income and benefits of employment and has incurred and will continue to incur attorney's fees, costs, and expenses of suit.

59. Defendant's conduct was outrageous because of its evil motive or reckless indifference to the rights of Plaintiff and, as such, warrants an award of punitive damages in such sum as will serve to punish Defendant and to deter it and others from like conduct.

## FOURTH CLAIM FOR RELIEF

**Discrimination – Race and Color – Violation of Missouri Human Rights Act, Section 213.010 et seq., RSMo 1986**

60. Plaintiff reasserts the prior allegations of this Complaint as though set forth fully herein.

61. Defendant, by its actions and failures to act, including but not limited to those described above, discriminated against Plaintiff because of his race and color in violation of the Missouri Human Rights Act.

62. Plaintiff was treated less favorably than other similarly situated non-white/ Caucasian employees.

63. Plaintiff's race and color were a motivating factor in Defendant's decision to take all adverse actions against Plaintiff, including terminating Plaintiffs' employment.

64. As a result of Defendant's discriminatory actions and failures to act as described herein, Plaintiff has suffered non-diagnosed emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life.

65. In addition, Plaintiff has lost income and benefits of employment and has incurred and will continue to incur attorney's fees, costs, and expenses of suit.

66. Defendant's conduct was outrageous because of its evil motive or reckless indifference to the rights of Plaintiff and, as such, warrants an award of punitive damages in such sum as will serve to punish Defendant and to deter it and others from like conduct.

## FIFTH CLAIM FOR RELIEF

**Retaliation - Violation of Missouri Human Rights Act, Section 213.010 et seq., and Section 213.070.1(2), RSMo 1986**

67. Plaintiff reasserts the prior allegations of the Complaint as though set forth fully herein.

68. Defendant, by its actions and failures to act, including but not limited to those described above, retaliated against Plaintiff for opposing Defendant's illegal discriminatory practices as more fully described above, all in violation of the Missouri Human Rights Act.

69. Plaintiff's opposition to AZ's illegal discrimination, was a motivating factor in Defendant's decision to retaliate and take all adverse actions against Plaintiff complained of herein, including terminating Plaintiffs' employment.

70. As a result of Defendant's retaliation, Plaintiff has suffered non-diagnosed emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life.

71. In addition, Plaintiff has lost income and benefits of employment and has incurred and will continue to incur attorney's fees, costs, and expenses of suit.

72. Defendant's conduct was outrageous because of its evil motive or reckless indifference to the rights of Plaintiff and, as such, warrants an award of punitive damages in such sum as will serve to punish Defendant and to deter it and others from like conduct.

### SIXTH CAUSE OF ACTION

### Negligent Hiring, Supervision, and Retention

73. Plaintiff reasserts the prior allegations of the Complaint as though set forth fully herein.

74. Plaintiff Whitehill was entitled to a lawful and productive work environment. He was additionally entitled to have his accommodation request considered by persons who would not discriminate or retaliate against him for making it.

75. When AZ employees, officers, and/or agents reviewed Plaintiff Whitehill's accommodation request, they discriminated against him on the basis of his age, sex, and religion and rejected his accommodation request.

76. At the same time, AZ approved the substantively similar accommodation request from another employee that was twenty-three years younger.

77. Defendant AZ encouraged this behavior and the violations of public policy and the law by allowing the persons who reviewed his accommodation request to remain employees of AZ.

78. Defendant AZ failed to properly supervise and improperly retained these individuals who reviewed Plaintiff's accommodation request after learning of their illegal, improper, and immoral behavior.

79. Under the doctrine of *respondeat superior*, Defendant AZ, as the employer of the persons who reviewed Plaintiff's accommodation request, is vicariously liable for the wrongful conduct of its employees, officers, agents, and managers.

80. As his employer, Defendant AZ has a duty to hire, employ, supervise, manage, and retain employees who are fit for those positions. AZ has a duty to see that managerial and supervisory employees properly exercise the authority and power entrusted to them in the workplace.

81. AZ breached these duties by failing to properly screen, train, and control their employees, officers, and/or agents. Those breaches include, but are not necessarily limited to, failing to develop, implement, and evaluate the effectiveness of proper policies and procedures to keep employees, officers, and/or agents from discriminating against Plaintiff and others on the basis of sex, religion, and/or age and to ensure that managers and supervisors understand and comply with applicable laws, including those against retaliating against an employee for engaging in protected conduct.

82. By hiring and retaining the persons who reviewed Plaintiff's accommodation request after learning of their immoral, improper, and illegal behavior, AZ acted recklessly by exposing Whitehill to them.

83. AZ's breach and negligence caused harm, severe physical injury, pain, suffering, and emotional distress to Plaintiff, and he is entitled to be compensated in an amount to be determined at trial.

84. AZ's breach of its supervisory duty was a direct and proximate cause of the injuries and loss suffered by Plaintiff Whitehill, who is entitled to an award of punitive damages in an amount sufficient to punish and deter AZ and all others from engaging in this conduct.

85. As a direct and proximate result of AZ's negligent hiring, supervision, and retention, Whitehill had to secure the services of attorneys to pursue this action, and he is entitled to recover his reasonable attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION

**Discrimination Based on Association - Violation of Missouri Human Rights Act, Section 213.070.1(4), RSMo 1986**

86. Plaintiff reasserts the prior allegations of the Complaint as though set forth fully herein.

87. Defendant AZ intentionally discriminated against Plaintiff Whitehill for associating with other persons who are members of a class protected by the Missouri Human Rights Act. To wit: Plaintiff associated with Christians, both within and outside of AZ, who opposed COVID-19 vaccination as a matter of their religious faith.

88. Defendant's intentional discriminatory conduct resulted in Plaintiff Whitehill's wrongful termination.

89. Plaintiff's association with Christians within and without AZ who oppose COVID-19 vaccination as a matter of their religious faith, was a motivating factor in Defendant's decision to take all adverse actions against Plaintiff complained of herein, including terminating Plaintiffs' employment.

90. As a result of Defendant's discrimination, Plaintiff has suffered non-diagnosed emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life.

91. In addition, Plaintiff has lost income and benefits of employment and has incurred and will continue to incur attorney's fees, costs, and expenses of suit.

92. Defendant's conduct was outrageous because of its evil motive or reckless indifference to the rights of Plaintiff and, as such, warrants an award of punitive damages in such sum as will serve to punish Defendant and to deter it and others from like conduct.

### EIGHTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

93. Plaintiff reasserts the prior allegations of the Complaint as though set forth fully herein.

94. Defendant AZ owed Plaintiff Whitehill a duty of care not to subject him or allow him to be subjected to unlawful discrimination and retaliation in the performance of his employment responsibilities or in the reasonable requests that he made to his supervisors at AZ.

95. Defendant AZ knew or should have known that its employees, officers, and/or agents denying his reasonable accommodation request and threatening with termination if he did not receive the COVID-19 vaccination were breaches of that duty to Whitehill and were likely to result in mental, physical, and/or emotional injury to Whitehill.

96. AZ permitting its employees, officers, and/or agents to deny Plaintiff's reasonable accommodation request and terminating his employment were breaches of the duty owed to Whitehill and were likely to – and did – result in mental, physical, and/or emotional injury to Plaintiff Whitehill.

97. As a direct and proximate result of Defendant AZ's negligent infliction of emotional distress, Whitehill has suffered damages and is entitled to recover compensatory and other damages related thereto.

98. Under the doctrine of *respondeat superior*, AZ is liable for the discriminatory and retaliatory actions of its employees, officers, and/or agents.

99. As a result of this conduct, Mr. Whitehill has suffered damges in an amount to be proven at trial.

100. As a direct and proximate result of Defendant's negligent infliction of emotional distress, Whitehill had to secure the services of an attorney to pursue this action and is entitled to recover his reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF – Applicable to All Counts

WHEREFORE, Plaintiff prays as follows:

A. For a trial by jury on all issues;

B. For damages allowable under statutes prohibiting discrimination and retaliation, including but not limited to back pay, front pay, lost benefits, interest on back pay, compensation for emotional distress, punitive damages, attorney's fees, and costs of suit, all as determined at trial;

C. For all damages allowed or recoverable under Missouri law for the intentional torts, including compensatory, special, general, and consequential damages;

D. For punitive damages in an amount sufficient to deter Defendant from engaging in such conduct in the future and as an example to other employers and elected officials not to engage in such conduct;

E. For costs of this action, including reasonable attorneys' fees and costs;

F. For a finding that Defendant AZ violated the MHRA and that such violation was willful;

G. For prejudgment and post-judgment interest as allowable by law; and

H. For such other and further relief as the Court shall deem just and proper.

Dated: June 24, 2023.                                Respectfully Submitted,

/s/ *John C. Burns*
John C. Burns, #66462 (MO)
Attorney for Plaintiff Thomas Whitehill
BURNS LAW FIRM
P.O. Box 191250
St. Louis, Missouri 63119
(314) 329-5040
john@burns-law-firm.com

Jenny L. Foley, Ph.D. (*pro hac vice forthcoming*)
RANDAZZA LEGAL GROUP, PLLC
4974 S. Rainbow Blvd., Ste. 100
Las Vegas, NV 89118
(702) 420-2001
ecf@randazza.com

RANDAZZA | LEGAL GROUP