**UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
MISSOURI EASTERN DIVISION**

|  |  |
|---|---|
| THOMAS WHITEHILL,<br><br>        Plaintiff,<br><br>  v.<br><br>ASTRAZENECA PHARMACEUTICALS LP,<br><br>        Defendant. | Case No. 4:21-cv-01030-MTS<br><br><u>**OPPOSITION TO MOTION TO DISMISS**</u> |

Plaintiff Thomas Whitehill ("Plaintiff" or "Mr. Whitehill") is a Christian who was 56 years old at the time of his termination by Defendant AstraZeneca Pharmaceuticals, LP ("Defendant" or "AstraZeneca"). (ECF No. 6 at ¶¶ 2, 3, & 30). Prior to his termination, AstraZeneca demanded its employees receive an injection that was marketed as providing immunization against the COVID-19 virus. *Id.* at ¶¶ 12-13. AstraZeneca ostensibly claimed that employees may seek a medical or religious exemption; however, when Mr. Whitehill timely sought a religious exemption, it was denied. *Id.* at ¶¶ 14-24. A younger employee (33 years old), who belonged to a different church, in contrast, was granted the exemption. *Id.* at ¶¶ 28-29.

Mr. Whitehill now seeks to be made whole for AstraZeneca's unlawful discrimination, bringing five claims under the Missouri Human Rights Act, §§ 213.010 *et seq.*, along with related claims. Defendant seeks to avoid its responsibility and has moved to dismiss per Fed. R. Civ. P. 12(b)(6). (ECF Nos. 13-14). That motion should be denied.

## I.    LEGAL STANDARD

As the Court is well-aware, when considering a Rule 12(b)(6) motion, the Court assumes all of a complaint's factual allegations to be true and draws all reasonable inferences in favor of

the nonmoving party. *See Neitzke v. Williams*, 490 U.S. 319, 328 (1989). To survive a motion to dismiss, a complaint must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'" *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The issue is not whether the plaintiff will prevail at trial, but whether the plaintiff is entitled to present evidence in support of the claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  With respect to the claims Mr. Whitehill will not be withdrawing, Defendant has failed to meet its burden; Plaintiff has properly stated the claims he intends to maintain.[1]

## II.   ARGUMENT

AstraZeneca discriminated against Mr. Whitehill on the basis of religion and age, as set forth in his First and Third Claims for Relief.  Their defenses lack merit and the motion to dismiss should be denied.  As noted above, Mr. Whitehill is withdrawing the remaining claims.

### A.  AstraZeneca Unlawfully Discriminated Against Mr. Whitehill on the Basis of Religion

In making a claim for religious discrimination, Mr. Whitehill must allege "(1) he has a bona fide belief that compliance with an employment requirement is contrary to his religious faith; (2) he has informed his employer about the conflict; and (3) he was discharged because of his refusal to comply with the employment requirement." *Johnson v. Angelica Unif. Group, Inc.*, 762 F.2d 671, 673 (8th Cir. 1985).  There does not appear to be any dispute over the second and third factors, only the first, whether Mr. Whitehill has a *bona fide* religious belief.  "[T]he burden to allege a conflict with religious beliefs is fairly minimal." *Bolden-Hardge v. Off. of the Cal. State*

---

[1] Although Mr. Whitehill is withdrawing some of his claims, it should not be viewed as a concession that they were without merit.  Rather, Mr. Whitehill has made a strategic decision to pursue the most egregious violations in the interests of judicial economy.

*Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023) (*citing Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S 707, 715 (1981)).  Mr. Whitehill meets this burden; his religious belief is *bona fide*.

In his request for a religious accommodation, Mr. Whitehill expressed the theological basis for why his sincerely-held religious beliefs precluded him from taking the AstraZeneca-mandated COVID vaccine, stating, in relevant part:

> "Today I am hereby invoking my religious right to exemption from taking the vaccine, and to the weekly asymptomatic Covid tests that are intrusive and unnecessary as per my deeply held religious beliefs. I believe that God has created me with an immune system, and I object to the intrusion of any medical intervention designed to modify God's design of my immune system. Regular Covid testing could damage the body, and the substances in the test may possibly be harmful. Further, it is my deeply held religious belief that I am called to protect the body and not participate in an unnecessary medical intervention, and in doing this I am honoring the Lord, as I am called to do. "Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God?" (1Cor 6:19)
> …
> It is my belief that in asking me to take a Covid vaccine and submit to discriminatory weekly asymptomatic Covid testing are infringement on my religious beliefs.
> …
> In summary, taking the COVID vaccination, and weekly asymptomatic PCR testing would violate my sincerely held religious beliefs, and I am Invoking my right to accommodation from taking the vaccine and weekly asymptomatic PCR testing. Because of my faith, and my deeply held Christian beliefs, for me to receive the COVID Vaccines and be subject to weekly asymptomatic PCR testing would cause me to violate these beliefs, and therefore would be in direct contrast with my deeply held Christian faith.
> …
> I am a practicing Christian, and I adhere to a Christian world view. Denominationally, I am a Reformed, evangelical Baptist and an active covenant member of Peine Ridge Church in Wentzville, MO (see attached letter from my pastor). In keeping with my local covenanted church body, my committed Christian faith binds me to the authority and sufficiency of Scripture (2 Tim 3:16) —that is a carefully studied biblical position (2 Tim 2:15) is to be upheld, articulated, engaged, and applied to all areas and spheres of life (social issues, ethics, etc.). In thoughtfully considering the Covid vaccine, I have a strong, sincere spiritual belief that, for me personally, receiving the Covid vaccine would violate my specific Christian worldview. My official church doctrinal position teaches that receiving or declining the Covid vaccine is a matter of conscience for each individual covenant church member (a Christian liberty, wisdom issue, or a type

of qualified 'autonomy of the believer'). Each covenant member, then, is to exercise their Christian liberty in freedom (Gal 5:13), to be convinced in their own mind (Rom 14:5) thru the study of Scripture, along with wise counsel so as not to violate their conscience. We are not to judge each other's decision (Col 2:16) in this area of Christian liberty, but instead, ensure we each one, commit to our personal decision that is informed by the Word of God (Col 3:16), wise counsel, saturated prayer, and yields a "pure heart," "good conscience," and "sincere faith" (1 Tim 1:5). For us, our body is not our own, but the Lord's, who redeemed it, made it His temple, and with it we must serve and glorify Him (1 Cor 6:19-20). I have multiple hesitations, and clear concerns that being vaccinated, and submitting to ongoing weekly asymptomatic PCR testing would be a violation of my deeply help religious beliefs. Romans 14:23 directly applies to me here: "But he who doubts is condemned if he eats, because his eating is not from faith; and whatever is not from faith is sin."

…

Further, it is my deeply held religious belief that I am called to protect the body and not participate in an unnecessary medical intervention, and in doing this I am honoring the Lord, as I am called to do. "Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God?" (1Cor 6:19) …As stated earlier, there are several areas regarding the use of the COVID Vaccines that would cause me to violate my deeply held religious beliefs if I were to take the vaccine and submit to weekly asymptomatic PCR testing[.]"

(ECF No. 6-1 at pp. 1-6).  In further support, Mr. Whitehill submitted a letter from Pastor Nathan Smith of Peine Ridge Church, to which Mr. Whitehill belongs, stating he was a member in good standing thereof since 2010 and that:

It has been my observation that Tom [Whitehill] sincerely believes that he must submit every area of his life to the teaching of the Christian scriptures, and that he consistently strives to do so in a manner that is consistent with the doctrines of our church and the dictates of his conscience.

*Id*. at p. 7.  In summary, Mr. Whitehill asserted that his particular brand of Christianity, in which he sincerely believes, commands him, as a matter of religious doctrine, to follow his conscience, and, in exercise of that commandment, informed by his understanding of the religious scripture in which he sincerely believes, wherein, as a matter of religious belief, taking the COVID vaccine would violate his body, his religiously-compelled conscience requires him to forego such vaccine.

This is far more detailed than what was sufficient to state a claim in *Welcome v. Amplity Inc.*, where the plaintiffs merely alleged "that their sincere religious beliefs precluded them from complying with Amplity's COVID-19 vaccination policy, for which they requested accommodation but were denied." 2023 U.S. Dist. LEXIS 44241, *10 (W.D. Mo. Mar. 16, 2023).

In response, AstraZeneca denied the request, stating, in relevant part:

> AstraZeneca has carefully considered your request on an individualized basis and taking into account applicable federal, state, and local law, including all information you shared as part of the interactive process. Based on a review of that information, we are unable to approve your accommodation request, because, among other reasons, you are not qualified for a reasonable accommodation. Additionally, the Company is entitled to deny requests for reasonable accommodation where the request poses undue hardship. Undue hardship can include, but is not limited to, business disruption/increased costs resulting from illness-related absences. As such, we are unable to approve your request and expect that you will come into compliance with our mandate. This decision is final and not subject to appeal.

(ECF No. 6-2).  AstraZeneca did not explain why they did not think Mr. Whitehill qualified.  *Id.* Nor was there any so-called "interactive process" beyond the mere solicitation of the request and denial.  Notably, had they engaged in the interactive process in good faith, they would have come to understand that Mr. Whitehill was, in fact, willing to undergo weekly testing *in lieu of* vaccination.  (ECF No. 6 at ¶ 23).  "Title VII's reasonable accommodation provisions [in religious claims] contemplate an interactive process, with cooperation between the employer and the employee[.]" *Kenner v. Domtar Indus.*, 2006 U.S. Dist. LEXIS 14478, *2 (W.D. Ark. Mar. 13, 2006).  Defendant discounts Mr. Whitehill's willingness to be tested on p. 10, n. 4 of its memorandum, stating that the Court did not need to accept the allegation in the face of the accommodation request itself, but there is no contradiction.  Had there been further discussions, rather than an outright denial by saying Mr. Whitehill was not qualified for *any* accommodation, AstraZeneca would have learned this.

Mr. Whitehill was, in fact, qualified for a reasonable accommodation, *i.e.* the weekly

testing AstraZeneca itself stated would be allowable and not cause an undue hardship. (ECF No. 6 at ¶ 16). AstraZeneca does not argue that weekly testing was a reasonable accommodation or that it would cause an undue hardship. Instead, AstraZeneca coldly threw this back at Mr. Whitehill, claiming that his continuing assessment of what he could and could not do as a matter of faith meant that his beliefs were not sincerely held. (ECF No. 14 at 8). This is akin to saying a Muslim or Jew who does not wish to eat pork does not sincerely believe that as an article of faith because they now eat in restaurants where a kitchen utensil that touched pork also touched their salad. "Judges are not oracles of theological verity, and the Founders did not intend for them to be declarants of religious orthodoxy." *Africa v. Pennsylvania*, 662 F.2d 1025, 1030 (3rd Cir. 1981). Moreover, even if there is conflicting evidence, this is a question for the jury. *See Vetter v. Farmland Indus.*, 120 F.3d 749, 752-753 (8th Cir. 1997); *accord EEOC v. Union Independiente De La Autoridad De Acueductos Y Alcantarillados De P.R.*, 279 F.3d 49, 56 (1st Cir. 2002) (stating that "a finding on the [element of sincerity] generally will depend on the factfinder's assessment of the employee's credibility").

AstraZeneca relies heavily on the decision in *Kiel v. Mayo Clinic Health Sys. Se. Minn*, 2023 U.S. Dist. LEXIS 135595 (D. Minn. Aug. 4, 2023), in which two individuals also sought religious exemption from a vaccination requirement. However, the *Kiel* Court favorably quoted *Petermann v. Aspirus, Inc.*, in which the *Petermann* Court observed that if an objection is not rooted in whether a vaccine is safe but rather that the employee believes they "must remain as God made [them]", then "that would be sufficient to show a religious conflict at the pleading stage." 2023 U.S. Dist. LEXIS 135595 at * 21-22 quoting 2023 U.S. Dist. LEXIS 53779, 2023 WL 2662899, at *2 (W.D. Wis. Mar. 28, 2023). Unlike the *Kiel* plaintiff, Mr. Whitehill did not ground his objection in harm, but rather that he objected "to the intrusion of any medical intervention

designed to modify God's design of my immune system." (ECF No. 6-1 at p. 4). This is precisely the type of belief that *Kiel* and *Petermann* stated would satisfy the first prong. *Accord Fisher v. Dep't of Fin. Insts.,* 2023 U.S. Dist. LEXIS 177285, *5-6 (W.D. Wash. Oct. 2, 2023)(denying motion to dismiss where employee alleged her body was "the craftmanship of [her] Creator" which her "Creator has granted [her] sole possession, proprietorship [sic], and use of"). This Court should otherwise find guidance in *Welcome*, *supra*, rather than in *Kiel*, where mere plausibility is all that is required at the motion to dismiss stage.

Even if the Court disregards *Welcome,* Defendant's arguments fail. AstraZeneca argues that the Court should disregard Mr. Whitehill's sincerely held religious belief because there is an element of personal belief. (ECF No. 14 at pp. 8-9). But, returning to the prior example, a Muslim or Jew might, in addition to the religious prohibition, personally find the notion of eating a pig revolting, but that does not make their choice not to eat pork any less grounded in religion. Otherwise, one might say the only sincere Christians are the ones hate wine, but take communion anyhow, which cannot be the case. That Mr. Whitehill's faith guides him to follow his conscience does not make the outcome of that guidance less religious—that Hillel and Shammai disagreed (Eruvin 13b:10-14) did not make either of them less of a believer, but rather both were right in their way. It is not the "God given right to make choices" as Defendant argues—it is the right to follow one's conscience. ECF No. 14 at p. 7 quoting *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465-466 (M.D. Pa. Aug. 26, 2022). That said, in *Finkbeiner*, the court was looking at a singular precept, which was not, unlike Mr. Whitehill's Christianity, "a comprehensive system of beliefs about fundamental or ultimate matters." *Id.* Similarly, Defendant's citation to *Griffin v. Mass. Dep't of Revenue*, 2023 U.S. Dist. LEXIS 125845, *14 (D. Mass. Jul. 20, 2023) fares no better where the employee had merely asserted, without more about their religion in general, that

-7-

vaccination violated their religious belief.  Notably, the right to follow one's conscience, in furtherance of the practice of religion, is consistent with the Missouri Constitution, Art. I, § 5, acknowledgment "That all men and women have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; that no human authority can control or interfere with the rights of conscience[.]"  Following one's "informed conscience" based on certain Christian teachings, is a "plausibl[e] alleg[ation of] conflicts with [an employee's] bona fide religious beliefs." *Fisher, supra*, at \*4-5 (denying motion to dismiss religious discrimination claim for failure to accommodate vaccination objection).

Nor should the Court be swayed by the belief that Mr. Whitehill's understanding of vaccine science, rightly or wrongly, somehow converts a religious belief into a non-religious belief.  For example, the Talmud at Shabbat 107b, verse 5, states that one can kill lice on the Sabbath because their understanding of biology was that lice do not reproduce sexually, when that is wrong as a matter of biology.  That scientific misunderstanding does not affect, today, whether one may or may not kill lice on the Sabbath.  Neither should Mr. Whitehill's understanding affect what he does, based on his sincerely-held religious beliefs, with that understanding

Mr. Whitehill is not simply choosing to remain unvaccinated.  His Christian faith admonishes him to follow his conscience, and in conjunction with the belief about how God created him, his conscience, guided by religious precepts, compels him to decline vaccination.  He has, therefore, sufficiently alleged a sincerely-held religious belief.  AstraZeneca has accommodated others of different religious faiths, but refused to accommodate him based on his religious faith.  AstraZeneca committed unlawful religious discrimination and the motion to dismiss this claim should be denied.

**B. AstraZeneca Unlawfully Discriminated Against Mr. Whitehill on the Basis of Age**

Other than belonging to a different church, the individual AstraZeneca accommodated was significantly younger than Mr. Whitehill.  To the extent it is not simply religious discrimination, the disparate treatment of Mr. Whitehill and this individual constitutes unlawful discrimination on the basis of age.

To make out a claim of age discrimination under the MHRA,[2] an employee need allege that he was a member of a protected class when he was terminated, that he was otherwise qualified for the position from which he was terminated when he was terminated, that the employer terminated him, and that his discharge occurred in circumstances giving rise to an inference of unlawful discrimination.  *See Riley v. Lance*, Inc., 518 F.3d 996, 1000 (8th Cir. 2008).  Again, only one factor appears at issue—whether there is an inference of unlawful discrimination—as AstraZeneca does not challenge protected class status, termination, or qualification.

Age discrimination claims under the MHRA are not required to have a "but for cause".  *See Clark v. Matthews Int'l Corp.*, 639 F.3d 391, 398 (8th Cir. 2011). "Nothing in [the] statutory language of the MHRA requires a plaintiff to prove that discrimination was a substantial or determining factor in an employment decision; if consideration of age . . . contributed to the unfair treatment, that is sufficient." *Daugherty v. City of Md. Heights*, 231 S.W.3d 814, 819 (Mo. 2007). A "contributing factor" is one "that contributed a share in anything or has a part in producing the effect." *Williams v. Trans State Airlines*, 281 S.W.3d 854, 867 (Mo. Ct. App. 2009) (internal quotation marks omitted); *see also Fleshner v. Pepose Vision Inst.*, 304 S.W.3d 81, 94 (Mo. 2010) (noting that "cases involving . . . the MHRA . . . turn on whether an illegal factor played a role in

---

[2] This same framework also holds for religious discrimination claims, of which failure to accommodate is flavor.

the decision to discharge the employee" (emphasis added)).  Mr. Whitehill sufficiently alleged age as a contributing factor.

The fourth factor may be established via "actions by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on [an illegal] discriminatory criterion…." *Boner v. Board of Comm'rs*, 674 F.2d 693, 696 (8th Cir. 1982) (*quoting Furnco Construction Corp. v. Waters*, 438 U.S. 567, 576 (1978)).  Here, Mr. Whitehill was disparately treated than a similarly-situated younger employee; comparison to a similarly situated non-protected class member may establish the fourth factor.  *See Wheeler v. Aventis Pharms.*, 360 F.3d 853, 857 (8th Cir. 2004).  Employees are similarly situated when they "are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id.*  At the *prima facie* stage, the burden is "not onerous." *Id*. (*quoting Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Here, Mr. Whitehill alleged that a 33-year-old employee, 25 years younger that Mr. Whitehill, was permitted to be tested weekly, rather than be vaccinated.  (ECF No. 6 at ¶ 28).  The accommodation request was "substantially similar".  *Id.*  That request was approved; Mr. Whitehill's was not.  AstraZeneca argues that Mr. Whitehill also sought an accommodation to not be tested weekly as well, but this is a red-herring.  AstraZeneca denied both accommodation requests and refused to engage in a good faith interactive process.  Mr. Whitehill was given no opportunity, upon further reflection, to agree to be tested weekly *in lieu of* vaccination.  Just as the mRNA vaccine is not a one-shot deal, neither should this process have been.  The other employee made a similar request, and he was accommodated through weekly testing.  Mr. Whitehill should have been permitted to take advantage of this accommodation as well, but AstraZeneca refused. They were, thus, "similarly situated in all respects." *Young v. Builders Steel Co.*, 754 F.3d 573,

578 (8th Cir. 2014). A significant distinguishing factor between these employees was their age. Thus, there are sufficient circumstances from which a factfinder can infer unlawful age discrimination.

### C.  In the Alternative, Mr. Whitehill Should be Granted Leave to Amend

Should the Court otherwise be inclined to dismiss the religious and age discrimination claims, Mr. Whitehill seeks leave to amend.[3]  Defendant asserts that "there is no amendment that could salvage Plaintiff's claims". (ECF No. 14 at p. 15).   Defendant is wrong.

Because the court should grant leave freely to promote justice, as claims should be decided on their merits, rather than pleadings, Mr. Whitehill should enjoy at least one chance to amend his complaint.  *See Wisdom v. First Midwest Bank*, 167 F.3d 402, 409 (8th Cir. 1999).  Although Plaintiff believes the allegations in the complaint are sufficient, should he be given the opportunity to amend, he could a) provide more information on his religious convictions, demonstrating them to be sincerely-held religious beliefs, not merely personal predilections; b) provide more information on his willingness to have undergone weekly testing; and c) provide more information on the similarly-situated younger employee who is of a different religious background.  Defendant wrongly attempts to lock Mr. Whitehill to what he wrote in his request, which gave no notice that such would be the singular opportunity to address religious beliefs and potential accommodation. It was supposed to be an interactive process, which, by its name, requires interaction.  Thus, to the extent necessary, leave to amend should be granted.

### III.  CONCLUSION

The matter should not be dismissed.  Mr. Whitehill pleaded sufficient allegations to

---

[3] Seeking such leave in opposing a motion to dismiss is sufficient. *See Wisdom v. First Midwest Bank*, 167 F.3d 402, 409 (8th Cir. 1999).

support his claims of religious and age discrimination.  AstraZeneca gave mere lip service to the interactive process and offered no valid justification for its determination that Mr. Whitehill was not qualified while, at the same time, affording an accommodation to a younger employee of different religious background.  The allegations in the complaint support all the elements of *prima facie* claims of discrimination; should they not, they can be saved through amendments.

WHEREFORE Defendant's motion to dismiss should be *denied*.

Dated: October 16, 2023                    Respectfully submitted,

                                           */s/ John C. Burns*
                                           John C. Burns, #66462 (MO)
                                           Burns Law Firm
                                           P.O. Box 191250
                                           St. Louis, Missouri 63119
                                           (313) 329-5040
                                           john@burns-law-firm.com

                                           *Attorneys for Plaintiff Thomas Whitehill*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2023**,** a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification to all counsel of record.

/s/ John C. Burns
John C. Burns